Argued January 5, reversed and remanded March 1, 1967

BLACK, *Appellant, v.* NELSON ET AL, *Respondents.*

424 P. 2d 251

*William E. Hurley,* Portland, argued the cause for appellant. On the brief were Bernard, Bernard & Hurley.

*Walter J. Cosgrave,* Portland, argued the cause for respondents. On the brief were Maguire, Shields, Kester & Cosgrave, and James K. Belknap.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, HOLMAN and LUSK, Justices.

LUSK, J.

Plaintiff appeals from a judgment for the defendant, Donald L. Nelson,[1] in a personal injury action growing out of a collision between two automobiles.

---

[1] The action was dismissed as against another defendant, Floyd F. Nelson, on motion of the plaintiff.

The accident occurred in the intersection of Sandy Boulevard with 33d Avenue and Peerless Place in Portland. Sandy Boulevard runs generally east and west. Peerless Place intersects it from the south and 33d Avenue from the north. Plaintiff was driving south on 33d Avenue and defendant was driving north on Peerless Place. Traffic lights control traffic at the intersection. Both drivers entered Sandy on a green light, each of them intending to make a lefthand turn. They collided, apparently somewhere south of the center line of Sandy Boulevard.

Plaintiff assigns as error the overruling of his objection to the admission in evidence of a statement in writing made by the defendant. The question arose during the cross-examination of defendant, who had been called as an adverse witness by the plaintiff. On direct examination, defendant testified that when he came up to the intersection and before entering it he saw the plaintiff's car approaching in the outside lane of 33d Avenue about 30 to 35 yards or 10 to 15 car lengths back of a car on the inside lane and which had stopped in the crosswalk on the north side of the intersection. He was then shown a handwritten statement made by him and concerning which he was asked:

> "Do you recall at that time saying, May 5, 1964, 'As I approached the intersection the traffic light was green for 33rd traffic and I proceeded into the intersection. I noticed a car traveling south on 33rd and was approximately two car lengths from entering the intersection. This car was in the inside lane. There was a car to this car's rear and about two car lengths behind it but in the outside lane of 33rd and traveling south also.' "

The witness answered: "Yes, sir." The defendant testified that the car "in the outside lane of 33rd and

traveling south also" was the car driven by the plaintiff.

On cross-examination counsel for defendant offered in evidence the entire statement, including the following:

"This intersection is large and the intersection is large enough so that David Black could have avoided the accident if he would have been looking."

Plaintiff objected to the admission of the part of the statement just quoted on the ground that it was a conclusion on the part of the maker of the statement and self-serving. The court overruled the objection and admitted in evidence the entire writing.

██ Defendant relies on ORS 41.880, which reads:

"When part of an act, declaration, conversation or writing is given in evidence by one party, the whole, on the same subject, may be inquired into by the other; when a letter is read, the answer may be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

The statute is not to be given a literal interpretation and so much is impliedly conceded by counsel for defendant. The rule is that "when a conversation or writing, in part, is received in evidence from one party, the remainder of the writing or conversation, to be competent, must be material and affect in some way the part already given in evidence": *State v. Weston*, 109 Or 19, 47, 219 P 180, and cases there cited. See, also, VII Wigmore on Evidence (3d ed) 523, § 2113; McCormick on Evidence 132, § 56.

██ The part of the writing received in evidence at the instance of the plaintiff disclosed an inconsistency

between defendant's testimony and his pretrial statement and was admissible for the purpose of impeachment and, possibly, as a declaration against interest. According to defendant's testimony, plaintiff's car was 10 to 15 car lengths behind the car on the inside lane when the defendant came up to the intersection. According to the pretrial statement, the distance between the two cars at that time was about two car lengths. It is, at least, susceptible to this interpretation, although the defendant might have intended to refer to the distance after he had entered the intersection. The construction of the writing, however, was for the jury. In any case, it is not open to argument that the portion of the pretrial statement in which the defendant expressed his opinion that, due to the size of the intersection, the plaintiff could have avoided the accident if he had been looking, in no way tends to explain or qualify the discrepancy between the defendant's testimony and the pretrial statement. It is, moreover, as we have characterized it, a mere opinion, and, while an admission against interest in the form of an opinion is competent evidence against the declarant, *Kraxberger v. Rogers,* 231 Or 440, 451-452, 373 P2d 647; *Swain v. Oregon Motor Stages,* 160 Or 1, 6, 82 P2d 1084, 118 ALR 1225, this is not true of a self-serving declaration, such as the statement in question. The ruling was, therefore, erroneous, and, as the statement went to the heart of the issue of negligence, we cannot say that the error was not prejudicial.

In view of a new trial one other assignment of error must be noticed.

■ Counsel for defendant called as an adverse witness Edwin G. Black, the father and guardian ad litem of the plaintiff, and asked him: "Mr. Black, state to the jury whether or not it is a fact that you and your

son have been paid under four different insurance policies for his hospital and medical expenses?" Counsel for plaintiff objected to the question on the ground of irrelevancy and also moved for a mistrial. The court overruled the objection and denied the motion and thereafter, over the continuing objection of plaintiff, elicited from the witness testimony that he had an insurance policy in the amount of $2,000, covering medical care, which was part of his automobile insurance, all of which was paid following the accident involved in this case, and, in addition, two insurance policies covering medical and hospital expenses of the witness' family.

The policies are not in evidence and the testimony regarding their provisions is fragmentary. Plaintiff's father was asked whether he knew how much of the bills incurred for medical and hospital services was paid by insurance and answered that he did not. There was no other evidence on the subject.

The plaintiff did not sue for recovery of his medical and hospital expenses and the question, therefore, is not one of mitigation of damages. The theory of the defendant is that the evidence objected to is admissible as showing motive. There is evidence from which the jury could have found that the plaintiff was seeking to recover for feigned injuries and ailments from which he was suffering prior to the accident. After the accident plaintiff was hospitalized five times for a total of 58 days and was under the care of his family physician and an orthopedist. The contention of the defendant, as stated in his brief, is that a reasonable person considering these facts would ask: "[W]as plaintiff seeking treatment aimed at the curing of actual injury and disability, or was he instead

motivated by the opportunity for profit from multiple coverages while he enhanced the value of a pending or anticipated lawsuit?" There is no evidence that either the plaintiff or his father derived any profit from the insurance, and whether there was an "opportunity for profit" is, under the record, sheer speculation.

Defendant argues, however, that where, in a personal injury action, there is evidence of malingering, collateral benefits may be shown on the issue of motive, citing *McElwain v. Capotosto,* 332 Mass 1, 122 NE2d 901; *Thompson v. Kawasaki Kisen, K.K.,* 348 F2d 879 (1st Cir); *Stanziale v. Musick* (Mo) 370 SW2d 261. In the *McElwain* case (a trial before the judge without a jury) the defendant was permitted to show on cross-examination that the plaintiff, who claimed to have been disabled from working as the result of an accidental injury, was entitled to pay from his employer after the first three days following injury on the job, even though he did not work. In the *Thompson* case the court (applying Massachusetts law) held that evidence of receipt by the plaintiff from an undisclosed source of a weekly sum was properly admitted. In the *Stanziale* case the benefits received by the plaintiff consisted of sick leave pay under a noncontributory sick leave plan of her employer, but the evidence showed that the plaintiff, after having given her physician a history of back trouble without any particular known cause, in order to obtain his support for sick leave benefits, later changed her history to the physician so as to show an injury in an automobile accident which occurred prior to the giving of the original history. The court sustained admission of the evidence of benefits "in the particular and peculiar circumstances of this case": 370 SW2d at 268.

On the other hand, the Supreme Court of the United States in *Eichel v. New York Central R. Co.,* 375 US 253, 84 S Ct 316, 11 L ed 2d 307, an action by a railroad employee, held that the trial court properly excluded evidence that the plaintiff was receiving $190 a month in disability payments under the Federal Railroad Retirement Act. One of the reasons given for the decision was that "it would violate the spirit" of the Federal statutes to admit such evidence. In addition the court said:

> "In our view, the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. \* \* \* It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." 375 US at 255.

See, also, *Caughman v. Washington Terminal Company,* 345 F2d 434 (DC Cir); *Louisville & N. R. Co. v. Utz,* 299 Ky 765, 187 SW2d 439; *Hellmueller Baking Co. v. Risen,* 295 Ky 273, 174 SW2d 134; Annotation, 88 ALR2d 483.

This is not a case of the receipt of collateral benefits compensating for time lost from work as the result of an alleged injury. It goes one step further in seeking to support the evidence of malingering by proof that the plaintiff—a high school student 17 years of age—received medical and hospital services without cost to his father. In our opinion, whatever probative value this evidence might have is outweighed by the

risk of prejudice always present when insurance is injected into a case of this kind. The rulings complained of were erroneous.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.