Argued December 4, 1973, reversed and remanded
February 14, 1974

JENKS, *Respondent, v.* LARIMER, *Appellant.*
518 P2d 1301

· *Frederic P. Roehr,* Portland, argued the cause for appellant. With him on the brief were Vergeer, Samuels, Roehr & Sweek, Portland.

*Charles V. Elliott,* Portland, argued the cause for respondent. With him on the brief were Elliott & Davis, Portland.

## TONGUE, J.

This is an action for personal injuries sustained in an automobile accident in which plaintiff's car was rear-ended by defendant's car when its brakes failed.

The case was tried before a jury, which returned a verdict for plaintiff in the sum of $18,600. Defendant appeals.

1. *Plaintiff's claim of special damages for loss of earnings or income.*

Defendant assigns as error the submission to the jury of plaintiff's claim of special damages for loss of earnings or income.

Plaintiff is the owner and operator of a driving instruction school near Beaverton. During 1971, the year before the accident, which occurred on February 22, 1972, plaintiff's business lost over $5,000. Within a few months after the accident he moved his business to a new and larger location and acquired more cars for use in driver training. He also hired more personnel, making a total of two full time and three part time driving instructors and one full time and two part time office employees. No evidence was offered to show the amount of profit or loss during the year 1972.

Plaintiff testified that he had previously averaged "about 50" hours per week in working himself as a driving instructor, for which he was paid $9 per hour, of which $1 per hour was expended for the cost of operating the car, or a "net of $8 per hour." He also testified that as a result of the injury received in the accident he was unable to work as a driving instructor for one year, during which he would have taken one two-week vacation. During that same year he paid $4 per hour to the drivers employed by him.

On the basis of this evidence plaintiff testified that at 50 hours per week, and at $8 per hour, he lost $400 per week, or $20,000 for a total of 50 weeks. From

that amount plaintiff deducted $108 for 12 hours of instruction for which he was paid during that year, leaving a balance of $19,802.[1] This was the amount claimed by plaintiff as special damages for loss of earnings or income and was submitted to the jury for consideration, over objection by defendant.

Defendant contends that this evidence was:

"* * * wholly insufficient to submit the issue of special damages to the jury where, as a man engaged in business, he failed to present sufficient information from which a jury could determine any net loss; and also failed to show the amount of work done by others as substitute for his own work. * * *"

Defendant also points out that:

"Even if plaintiff's evidence could be accepted as sufficiently certain to show a probability of hiring that much substitute help (i.e., 2,500 hours), the cost to plaintiff would have been only $4 per hour, the rate paid to other instructors, or *exactly half of the figure submitted to the jury for its consideration.*"

For these reasons, defendant says that plaintiff's proof of alleged loss of earnings or income was "purely speculative" and failed to satisfy the requirement of "reasonable certainty" in that no "supporting data" was offered, as required in *Douglas Const. v. Mazama Timber,* 256 Or 107, 115, 471 P2d 768 (1970).

Plaintiff responds by contending that he "did not allege nor did he seek to prove a loss of business profit," but that his claim was for "loss of income" or "earnings"; that *Douglas* was an action for damages for breach of contract in which loss of future profits

---

[1] These calculations appear to err by $90 in favor of defendant. The discrepancy is unexplained in the record.

were claimed; that plaintiff's evidence of weekly hours, rates of pay and inability to work was "unrefuted" and constituted "simple but certain proof of loss" which "established the special damages [for 'lost income'] with far more than reasonable certainty."

If plaintiff had been employed by another person as a driver at $9 per hour we might agree with plaintiff's contentions, although even then if he could have hired a substitute at $4 per hour he might have been required to so mitigate his claim of damages. In this case, however, plaintiff was not claiming loss of wages, earnings, or income as an employee. While plaintiff sought to characterize his claim as one for loss of earnings, his claim was not that of an employee, but the claim of the owner and operator of a small business. Although he worked in that business he also hired other persons to drive the customers of his business. Plaintiff's situation was also different from that of an employed driver in that he was subject to payment of overhead and other costs of operating a business in addition to the cost of leasing cars for use in driving instruction.[2]

■ Under these circumstances plaintiff was not entitled to claim the gross amount payable to him as a driver, less only the cost of operating that car. Instead, as the owner and operator of a small business he was entitled to be paid the net loss of the earings of that business which resulted from his disability.

■ It is true, as pointed out by plaintiff, that *Douglas* involved a claim for damages for breach of contract, including alleged loss of future profits. Nevertheless,

---

[2] Plaintiff stated on cross-examination that after the accident he had changed from leasing to buying cars used for driver instruction.

claims for damages resulting from torts consisting of alleged loss of earnings or income of a business, as in this case, whether past or future, must nevertheless be established with "reasonable certainty" in the sense that "supporting data" must be offered to the extent that such data is reasonably available to show both the existence and amount of the alleged loss of past or future earnings or income, and in terms of net, rather than gross earnings or income. See *Pearson v. Schmitt,* 259 Or 439, 442, 487 P2d 84 (1971). Cf. *Verret v. Leagjeld,* 263 Or 112, 115, 501 P2d 780 (1972). See also McCormick on Damages, 309-313, § 87 (1935).

The evidence offered by plaintiff in this case failed to satisfy these requirements. It follows that the trial court erred in submitting to the jury plaintiff's claim for special damages for loss of earnings or income. It also follows that the case must be remanded for a new trial.

2. *The instruction on excuse for violation of a statute and predisposition to injury.*

Defendant also assigns as error the giving of an instruction by the trial court, apparently based upon our then-recent decision in *Barnum v. Williams,* 264 Or 71, 504 P2d 122 (1972), to the effect that the jury could excuse defendant for failure to "strictly observe" a statute "if you find that, under all the attending circumstances, a statute cannot, or should not, be complied with by a person exercising the *highest degree of care* for the safety of himself and others."

■ Defendant contends that although such an instruction might be proper in some instances, it was not proper in this case because the only statutes involved were the "Basic Rule [ORS 483.102] and the statute on

control [ORS 483.345]," both of which require no more than reasonable care.

We agree that the instruction was improper. In *Barnum v. Williams, supra,* we held (at 264 Or 79), that:

"\* \* \* [t]he violation of a motor vehicle statute creates a presumption of negligence. When the evidence establishes that a party has violated a motor vehicle statute, such a party has the burden of producing evidence that, nevertheless, he was acting *reasonably.* Without such evidence the party is negligent as a matter of law. *Raz v. Mills,* 231 Or 220, 226-227, 372 P2d 955 (1962).

"If the party having such burden produces no evidence of *reasonable conduct* or the court finds the evidence produced is insufficient to prove *reasonable conduct,* the court must find the party negligent as a matter of law. If the party produces evidence which the court determines raises a question of fact whether the party acted *reasonably,* despite violation of the statute, then, the question of the party's negligence is for the jury." (Emphasis added)

See also Oregon State Bar Uniform Jury Instruction No. 10.03.

■ Defendant also assigns as error the giving of an instruction on predisposition to injury because of previous accidents. We find sufficient evidence to support the giving of that instruction, despite defendant's contention that plaintiff's counsel, in the course of argument, may have taken inconsistent positions.

3. *Defendant's evidence of collateral income and prior inconsistent statements.*

■ Defendant assigns as error the refusal of her offer of proof that prior to the accident plaintiff had

not only lost money in his business, but that since the accident plaintiff "has been drawing disability insurance, from the time of the accident to the present time, in the amount of $500 per month," as well as payment of his medical bills "in duplication" from two or more insurance companies, and that plaintiff also had three bank loans upon which payments were made during the same period under other provisions or policies for disability insurance.

Defendant offered this evidence as a foundation for proposed questions to plaintiff's doctor for an opinion "whether this man is remaining disabled because of this opportunity to receive these disability payments and * * * to test the motives of this man * * *."

Defendant recognizes that in "a similar case," *Black v. Nelson,* 246 Or 161, 424 P2d 251 (1967), this court reversed a trial court for receiving somewhat similar evidence and held that under the facts of that case "whatever probative value the evidence might have is outweighed by the risk of prejudice always present when insurance is injected into a case of this kind." See also, Annot., 47 ALR3d 234 (1973). Defendant, however, seeks to distinguish that case on its facts.

We do not believe, however, that differences in the facts between the two cases are such as to require us to reverse the trial judge for his holding that the rule of the *Black* case is properly applicable in this case.

■ Defendant's remaining assignment is that the trial court erred in excluding her offer of a copy of a complaint filed by plaintiff 13 years ago in a case in which he alleged that he received a permanent injury to his "dorsao-lumbar [sic] spinal area" for which he

asked for $10,000 for "permanent injury and disability." Because plaintiff, on cross-examination in this case, denied that the dorsal area of his back was injured in that accident, the allegations of the complaint alleging that injury, including the amount claimed for that injury, were admissible for purposes of impeachment. Cf. *Marsh v. Davidson*, 265 Or 532, 510 P2d 558 (1973).

Because of the errors discussed in this opinion, the judgment of the trial court must be reversed and the case remanded for a new trial.